**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | |
|---|---|
| KELLY LEE O., | Case No.: 1:24-cv-00175-REP |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Pending is Plaintiff Kelly Lee O.'s "Complaint for Review of Social Security" (Dkt. 1), appealing the Social Security Administration's denial of her disability claim. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On December 2, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 31, 2019. The claim was originally denied on August 26, 2021, and again on reconsideration on January 7, 2022. On or around February 10, 2022, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On April 4, 2023, ALJ Christel Ambuehl held an online video hearing (due to the COVID-19 pandemic), at which time Plaintiff, appearing with her attorney Britney Ocampo, testified. Mark J. Schwager, an impartial vocational expert, also appeared and testified at the same hearing.

On May 3, 2023, the ALJ issued a decision denying Plaintiff's claim, finding that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff timely requested review from the Appeals Council. On February 7, 2024, the Appeals Council denied

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Plaintiff, having exhausted her administrative remedies, brings this case. She contends the ALJ erred in three respects: (i) the ALJ failed to properly evaluate the medical opinions; (ii) the ALJ failed to provide clear and convincing reasons to disregard Plaintiff's subjective symptom allegations; and (iii) the ALJ failed to provide germane reasons to disregard lay witness statements. Pl.'s Brief at 5-20 (Dkt. 14). Plaintiff requests that the Court either reverse the ALJ's decision and find that she is entitled to benefits, or remand the case for further proceedings. *Id*. at 20; *see also* Compl. at 2 (Dkt. 1).

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). If there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance. *Trevizo*, 871 F.3d at 674. It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible

**MEMORANDUM DECISION AND ORDER - 2**

for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015). Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. <u>DISCUSSION</u>

### A.    **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the

**MEMORANDUM DECISION AND ORDER - 3**

claimant has engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant has not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Plaintiff has not engaged in SGA since July 31, 2019, the alleged onset date. AR 28.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Plaintiff has the following severe medically determinable impairments: "post-traumatic stress disorder (PTSD); major depression; degenerative disc disease of the cervical spine, status post cervical fusion; and distal tibial pilon fracture on the right." AR 28-30.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ

**MEMORANDUM DECISION AND ORDER - 4**

concluded that Plaintiff's above-listed medically determinable impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments.  AR 30-32.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for her to perform past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  20 C.F.R. §§ 404.1545, 416.945.  An individual's past relevant work is work she performed within the last 15 years, or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA.  20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (sometimes referred to in this decision as RFC) to perform medium work as defined in 20 CFR 404.1567(c) except with the following limitations: The claimant is able to frequently climb ladders, ropes, or scaffolds.  She can frequently, but not constantly, crawl.  The claimant can have occasional interaction with coworkers, and no interaction with the public.  She is limited to occasional changes in a routine work setting.

AR 32-36.

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, she is not disabled; if the claimant cannot do other work and meets the duration requirement, she is disabled.  Here, the ALJ found that Plaintiff was unable to perform any past relevant work as a Veteran Service Representative, but

**MEMORANDUM DECISION AND ORDER - 5**

nonetheless was capable of working full-time in the following occupations: dish washer, industrial cleaner, and laundry worker.  AR 36-37.  Based on these findings, the ALJ concluded that Plaintiff was not under a disability from July 31, 2019, the alleged onset date, through the date of the May 3, 2023 decision.  AR 37-38.

**B.    Analysis**

      1.    <u>The ALJ Properly Considered the Medical Opinion Evidence</u>

In evaluating Plaintiff's mental impairments and their limiting impacts, the ALJ considered several competing medical opinions.  AR 35.  Plaintiff's first challenge relates to the ALJ's weighing of this opinion evidence, specifically as to (i) Nathan Ellis, LCPC, and (ii) the state agency psychological consultants.  Pl.'s Brief at 5-11 (Dkt. 14).  Each claim is taken up below.

      a.    *The Standard for Evaluating Medical Opinions*

Because this case was filed after March 27, 2017, the revised regulations governing the evaluation of medical evidence apply.  *See* 20 C.F.R. § 404.1520c.  Under these regulations, the ALJ is no longer required to give deference to any medical opinion, including treating source opinions.  *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022); *see also* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").

Instead, the ALJ evaluates the "persuasiveness" of the opinions based on several factors. *Id*.  These are: (i) supportability, (ii) consistency, (iii) relationship with the claimant, (iv) specialization, and (v) any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 416.920c(c)(1)-(5).  The ALJ's duty to articulate a rationale for each factor varies. 20 C.F.R. §§ 404.1520c(a)-(b).

**MEMORANDUM DECISION AND ORDER - 6**

Supportability and consistency are the most important factors, and the ALJ, therefore, must explain how both factors were considered. *Woods*, 32 F.4th at 792; 20 C.F.R. § 416.920c(b)(2). The supportability factor looks inward at a medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ is only required to articulate findings on the remaining factors (treatment relationship, specialization, and any other factors) where "two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(2)-(3).

Courts review the ALJ's persuasiveness determinations under these regulations using the substantial evidence standard. To be upheld, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods*, 32 F.4th at 787.

> b.    *LCPC Ellis*

LCPC Ellis is Plaintiff's counselor. On April 12, 2023, he completed a "Mental Residual Functional Capacity Assessment" (the "Assessment") on Plaintiff's behalf. AR 1907-10. LCPC Ellis indicated that Plaintiff had moderate to marked limitations in all areas of mental functioning, with mostly marked limitations in areas that involved detailed instructions, sustaining concentration and persistence, interacting with others, and adapting to changes or unfamiliar places. AR 1907-08; *see also* Pl.'s Brief at 6 (Dkt. 14) (Plaintiff explaining that

LCPC Ellis "opined that Plaintiff was markedly impaired in all areas of broad mental functioning due to her PTSD.").  LCPC Ellis elaborated on these opinions in a separate letter accompanying the Assessment.  AR 1911-12.

The ALJ found these opinions unpersuasive and instead credited the opinions of agency doctors in finding that Plaintiff was not precluded from engaging in medium work.  AR 35.  According to the ALJ:

> The undersigned finds Therapist Ellis's opinion to be unpersuasive because it is not supported by his explanation, which relies heavily on the claimant's self-reports.  Indeed, the explanation lacks a detailed explanation for why there are some areas with marked limitations and others with moderate limitations.  Moreover, the opinion is not consistent with the record as a whole.  The record shows the claimant's mood is stable in many records, such that she has even discontinued medications. Her mental status examinations are also intact.  While the undersigned agrees that the claimant does have some mental limitations, they are not the extent suggested by Therapist Ellis's opinion.

*Id*. (internal citations omitted).  Plaintiff contends that the ALJ's justification for dismissing LCPC Ellis's opinions is insufficient and thus unsupported by substantial evidence.  Pl.'s Brief at 6-10 (Dkt. 14).  The Court disagrees.

First, as to supportability, the ALJ criticized LCPC Ellis's opinions because the debilitating limitations reflected in the Assessment's check-the-box format were not sufficiently explained.  AR 35.  Although "there is no authority that a 'check-the-box' form is any less reliable than any other type of form," *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017), the Ninth Circuit has clarified that "[a]n ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion.  While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions."  *Ford v. Saul*, 950 F.3d 1141, 115 (9th Cir. 2020) (citations and internal quotation marks omitted).  Here, the

**MEMORANDUM DECISION AND ORDER - 8**

Assessment itself contains no explanations for the described limitations whatsoever. *See* AR 1909 (leaving blank the "functional capacity assessment" section, asking: "Record in this section the elaborations on the preceding capacities. . . . Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function."). Presumably, that is why LCPC Ellis attached a letter to the Assessment.

But even the letter comes up short. Most obviously, as the ALJ highlighted, it discusses Plaintiff's limitations on the whole, but does not explain why certain of those limitations are more substantial than others. That is, the letter supplies support for the existence of limitations generally, which the ALJ does not dispute. However, critically, the letter does not validate the *degree* of the limitations referenced in the Assessment.

Plaintiff responds that "such an explanation is not required to find a medical opinion persuasive." Pl.'s Brief at 7 (Dkt. 14). Not quite. Given that the regulations require ALJs to consider the supportability and consistency of medical opinions (*supra*), it was proper for the ALJ to critique LCPC Ellis's opinions on this point. *Supra*. And this is particularly important because the differences between moderate limitations and marked limitations impact whether Plaintiff's understood mental disorders meet or medically equal a listed impairment at step three of the sequential process, as well as the extent to which Plaintiff's limitations are encapsulated within her RFC at step four of the sequential process. *See* Def.'s Brief at 7 (Dkt. 19) ("A marked impairment interferes seriously with your ability to independently initiate, sustain, or complete activities, while a moderate limitation results in a fair ability to do the same.") (citing 20 C.F.R. Pt. 404 Subpt. P, Appx. 1 § 12.00(F)(2)(c),(d) (Mental Disorders)); *see also* Pl.'s Brief at 10 (Dkt. 14) (suggesting that, if Plaintiff met the criteria for the mental health listing, "the ALJ would be required to conduct further analysis on step three of the sequential process'). Ultimately, "[t]he ALJ need not accept the opinion of any physician, including a treating

**MEMORANDUM DECISION AND ORDER - 9**

physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."
*Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *see also Weiss v. Kijakazi*, 2023 WL
4030839, at *1 (9th Cir. 2023) ("These opinions were in check-box form and were not
accompanied by explanation or narrative.  Because these opinions contained little in terms of
objective medical evidence and supporting explanations, the ALJ reasonably found them
unpersuasive.").

      Moreover, the letter relies on Plaintiff's subjective statements and complaints.  *See* AR
1911-12 (for each limitation, consistently noting Plaintiff's self-reports rather than objective
medical evidence).  The Ninth Circuit has repeatedly held that an ALJ may not reject the report
of a counselor "simply because of the relative imprecision of the psychiatric [or psychologic]
methodology" which necessarily depends "in part on the patient's self-report, as well as on the
clinician's observations of the patient."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).
But this does not mean that psychological opinions are insulated from all review.  When
unsupported by the record, an ALJ may discount an "opinion of disability premised to a large
extent upon the claimant's own accounts of [her] symptoms and limitations."  *Id*.; *see also*
*Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005) (upholding the rejection of two
psychological assessments where those assessments were brief, conclusory, and unsupported by
any "clinical evidence" other than the Petitioner's unadorned subjective complaints).

      LCPC Ellis's opinions about Plaintiff's limitations are not supported by his own
treatment notes for Plaintiff.  They mainly document Plaintiff's reported symptoms and life
experiences, but do not include any significant findings to support the Assessment's conclusions.
This does not mean that LCPC Ellis did not repeatedly remark about Plaintiff's depressed,
anxious, and hypervigilant mood, or her related diagnoses; he absolutely did.  *See, e.g.*, AR
1015-27, 1060-76, 1078-86, 1243-53, 1262-70, 1281-90, 1322-31, 1348-57, 1384-93, 1418-27,

1452-62, 1465-74, 1483-91. But Plaintiff's reliance on these specific instances to substantiate LCPC Ellis's Assessment misses the point. Pl.'s Brief at 6-7 (Dkt. 14) ("Based on Plaintiff's statements and his examinations and interviews, LCPC Ellis opined that Plaintiff met the criteria for PTSD with symptoms that were in line with his training, experience, and available trauma-related research.").[1] There is no dispute that Plaintiff suffers from PTSD and major depression which have more than a minimal effect on her ability to perform work-related activities. AR 28-30 (ALJ finding that Plaintiff's PTSD and major depression, among other medically determinable impairments, are severe). However, these understood, severe impairments and related limitations do not *ipso facto* establish disability. *See Mullins v. Astrue*, 2012 WL 71708, at *6 (C.D. Cal. 2012) ("the existence of some pain does not constitute a disability if it does not prevent Plaintiff from working"); *see also Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989) (the social security program is "intended to provide benefits to people who are unable to work; awarding benefits in cases of nondisabling pain would expend the class of recipients far beyond that contemplated by the statute"). More is needed.

But LCPC Ellis's treatment notes for Plaintiff ahead of the Assessment fail to supply that support. True, they acknowledge Plaintiff's symptoms. But as Defendant references, they also routinely show euthymic and/or appropriate mood, congruent affect, oriented to person, place, time, and situation. Def.'s Brief at 8-9 (Dkt. 19). These point-in-time observations do not square with the Assessment. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective

---

[1] Plaintiff also suggests that *the fact* of his treatment relationship with LCPC Ellis is "significant." Pl.'s Brief at 7 (Dkt. 14). But this ignores the revised regulations. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). In any event, treatment relationships are considered when there are two equally persuasive medical opinions about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3). Here, the ALJ found the agency doctors' opinions more persuasive, thus undercutting Plaintiff's argument in this respect. *See infra.*

**MEMORANDUM DECISION AND ORDER - 11**

medical evidence and supporting explanations presented by a medical source are to support his

or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be.").  Absent

more fulsome and corroborating treatment notes, LCPC Ellis's opinions are left unsupported.

*See Batson*, 359 F.3d at 1195 n.3 (brief and conclusory report did not provide support for

limitations assessed in the absence of objective medical evidence in the physician's treatment

notes); *see also Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical

source supports the medical opinion by explaining the 'relevant . . . objective medical

evidence.'") (quoting 20 C.F.R. § 404.1520c(c)(1)).

        Second, as to consistency, the ALJ indicated that Plaintiff's medical records show that

her mood was often listed as stable, she had discontinued medications, and her mental status

examinations were intact.  AR 35 (citing AR 412, 418, 560, 562, 593, 1797, 1800, 1248-49).[2]

These observations followed the ALJ's consideration of the agency doctors' opinions, which the

ALJ found to be more persuasive than LCPC Ellis's opinions, further emphasizing the lack of

consistency in LCPC Ellis's opinions across the medical record.  *Id.* (citing AR 81-89, 91-99).

Opinions inconsistent with the objective treating record represent a valid basis to discount a

medical opinion.  *Woods*, 32 F.4th at 794; *see also* 20 C.F.R. § 404.1520c(c)(2) ("The more

consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion . . . will be.").

        Plaintiff counters that, despite these seemingly normal mental status examinations, "the

overall treatment record otherwise reflect[s] Plaintiff's longstanding treatment for her PTSD."

Pl.'s Brief at 8-9 (Dkt. 14) ("For instance, LCPC Ellis conducted his initial Comprehensive

_____

        [2]  Plaintiff appropriately points out that two of these records – referenced at AR 560 and
562 – were from 2018 and pre-dated his alleged onset date of July 31, 2019.  Pl.'s Brief at 8
(Dkt. 14); *see also Carmickle v. Comm. of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)
("Medical opinions that predate the alleged onset of disability are of limited relevance.").

**MEMORANDUM DECISION AND ORDER - 12**

Diagnostic Assessment of Plaintiff in September 2021 in which he diagnosed her with chronic

PTSD with consistent and ongoing follow-up with Plaintiff.").  Except, as stated above,

Plaintiff's PTSD and related treatment over time is undisputed; the ALJ acknowledged as much

when she determined that Plaintiff's PTSD and major depression are severe impairments.  AR

28-30.  Regardless, even if this argument represented a competing interpretation of the record,

the question on appeal is not whether substantial evidence exists to support Plaintiff's preferred

findings, but whether substantial evidence supports *the ALJ's* findings.  *Rollins v. Massanari*,

261 F.3d 853, 857 (9th Cir. 2001) (when an ALJ presents a reasonable interpretation that is

supported by the evidence, it is not the role of the courts to second guess it).  Here, the ALJ's

interpretation of LCPC Ellis's opinions may not be the only reasonable interpretation implicated

by the record, but it is supported by substantial evidence.  *Tommasetti v. Astrue*, 533 F.3d 1035,

1038 (9th Cir. 2008) (as long as the evidence rationally supports the ALJ's conclusions, those

conclusions must be affirmed).[3]

---

[3] Though never before the ALJ, Plaintiff also argues that an October 2019 Disability
Benefits Questionnaire from the Department of Veterans Affairs ("VA") helps prove that LCPC
Ellis's opinions are actually consistent with the surrounding medical record.  Pl.'s Brief at 9-10
(Dkt. 14) (citing AR 8-16).  But benefits decisions from the VA are not binding.  *See* 20 C.F.R.
§ 404.1504 ("Because a decision by any other governmental agency . . . about whether you are
disabled . . . is based on its rules, it is not binding on us and is not our decision about whether
you are disabled . . . under our rules.").  There is likewise no requirement for an ALJ to discuss
the VA's disability rating.  *Id*.; *see also Kitchen v. Kijakazi*, 82 F.4th 732, 738-39 (9th Cir.
2023); *but see* AR 35 (ALJ acknowledging that Plaintiff "was found disabled by the [VA] for
service connected PTSD, major depressive disorder, and right ankle fracture status post open
reduction with internal fixation, among other things.").  But that is what Plaintiff urges the Court
to do: consider the Questionnaire.  *See, e.g.*, *T.R. v. Comm. of Soc. Sec.*, 2024 WL 1421276, at *7
(N.D. Cal. 2024) ("[T]he plaintiff . . . argues only that the ALJ failed to consider the VA's actual
findings, not the evidence underlying the ALJ's findings.  Because the ALJ was not required to
consider those findings, the court denies remand on this ground.").  In any event, this
Questionnaire does not change the Court's analysis.  While it identifies Plaintiff's conditions and
symptoms (which the ALJ also considered and mostly endorsed (*supra*)), it supplies no new
medical evidence that backs up LCPC Ellis's opinions four years later.  In other words, the lack
of consistency with LCPC Ellis's opinions remains a problem despite the Questionnaire.

**MEMORANDUM DECISION AND ORDER - 13**

With these reasons in mind, the ALJ adequately explained her findings concerning LCPC Ellis's opinions. Plaintiff may believe that the ALJ did not give these opinions the weight they deserved, but the ALJ considered them against the surrounding medical record and decided that they lacked supportability and consistency under the regulations. Because the evidence can reasonably support the ALJ's conclusion in this respect, the Court will not substitute its judgment for that of the ALJ's, even if the Court were to have a different view. *Richardson*, 402 U.S. at 401. Accordingly, the ALJ's evaluation of LCPC Ellis's opinions is supported by substantial evidence.

Remand is not warranted on this issue.

*c.*    *The State Agency Psychological Consultants*

Upon initial application, DDS psychological consultant, Mack Stephenson, M.D., opined in August 2021 that Plaintiff has certain social interaction limitations, but was "capable of minimal public contact"; "can accept supervision if delivered in a clear direct manner"; and "can tolerate usual cursory coworker contacts." AR 87. On January 6, 2022, Dave Sanford, M.D., agreed with the limitations identified by Dr. Stephenson upon reconsideration. AR 97-98 (additionally stating: "Claimant's only limitations are social, may have some difficulty interacting with the public, may work better with things instead of people, but is still capable of working with people on a limited basis.").

Understanding that the agency doctors concluded that Plaintiff can perform a range of medium work that includes minimal public contact, the ALJ found these opinions persuasive. AR 35. According to the ALJ:

> The undersigned finds that assessment to be persuasive and generally consistent with the record as a whole. However, additional mental limitations have been added to the RFC to account for the claimant's reports like intermitted issues with multitasking, and having heightened symptoms when hypervigilant (hearing testimony). The State agency consultants do not generate any

**MEMORANDUM DECISION AND ORDER - 14**

> independent findings or treatment notes to support their assessments, but they
> are supported by an explanation of the medical signs, symptoms, and findings in
> the record at the time of their determinations.

*Id*.  Plaintiff contends that this analysis is too cursory and does not constitute a proper analysis under the new regulations.  Pl.'s Brief at 11 (Dkt. 14) (arguing that the ALJ "did not properly evaluate the supportability and consistency of the medical opinions of the state agency consultants because (i) she "failed to cite any medical records that separately supported the agency consultants' conclusions," and (ii) she "summarily determined [the agency consultants' assessments] 'to be persuasive and generally consistent with the record as a whole'" without specifically discussing the consistency of such findings).  The Court again disagrees.

First, as to supportability, the ALJ properly recognized that, with assessments from agency doctors, independent findings and treatment notes do not exist.  AR 35.  That said, the ALJ went on to explain how Drs. Stephenson and Sanford supported their assessments by explaining the medical signs, symptoms, and findings in the record that supported their opinions. *Id*.; *see, e.g.*, AR 82-84 (Dr. Stephenson, after discussing the "Findings of Facts and Analysis of Evidence," concluding: "Clmt with history of PTSD, anxiety, depression, and alcohol dependence.  Clmt sx are improved with alcohol cessation and medication prescribed by PCP. Sx appears to be in setting of work environment around other people.  Sx decreased since she stopped working.  Overall, evidence supports moderate limits in social interactions."), 93-94 (same for Dr. Sanford).  This sufficiently addresses the supportability criterion of these agency doctors' opinions.

Second, as to consistency, the Court agrees with Defendant that, when an ALJ makes reference to an opinion being "consistent with the record as a whole," it is not improper for the Court to consider how the ALJ interpreted that same record within her decision.  Def.'s Brief at 6 (Dkt. 19) (citing *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)).  One cannot be

**MEMORANDUM DECISION AND ORDER - 15**

understood without the other. Doing so here reveals that, elsewhere in her decision, the ALJ

commented how "the medical evidence of record shows the claimant has been able to maintain a

stable mood and decreased symptoms with counseling, walking, and minimal horse work." AR

34 (citing AR 979, 1011-55, 1797, 1800, 1820). Similarly, whereas the above-referenced mental

status examinations contrasted with LCPC Ellis's opinions, they now align with Drs.

Stephenson's and Sanford's opinions. AR 34 ("The claimant reports doing well to providers,

and her mental status examination findings are intact when done.") (citing AR 412, 418, 593,

1797, 1800, 1248-49). This sufficiently addresses the consistency criterion of these agency

doctors' opinions.[4]

      At bottom, the ALJ adequately explained her findings concerning state agency

psychological consultants. There is room to argue that the ALJ could have been more clear and

complete in this regard, but the Court is able to discern from the context of the decision that the

ALJ accepted these opinions as being both internally supported and consistent with the external

record. *Sanchez v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4798452 at *14 (D. Ariz. 2022) ("an

'incantation' of 'magic words' is not required of an ALJ, only sufficient explanation to allow

'specific and legitimate inferences' from the decision to allow the court to conclude that the

applicable standard has been met.") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir.

1989)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency

explains its decision with less than ideal clarity, we must uphold it if the agency's path may

reasonably be discerned.") (internal citation omitted). Plaintiff believes that the ALJ gave these

---

     [4] As part of her critique on this point, Plaintiff ironically questions how the agency
doctors' opinions could have been persuasive, given the ALJ's inclusion of *additional* mental
limitations to the RFC. Pl.'s Brief at 11 (Dkt. 14). These are not mutually exclusive concepts
when realizing that the additional mental limitations resulted from Plaintiff's later testimony.
AR 35.

**MEMORANDUM DECISION AND ORDER - 16**

opinions too much weight, but the ALJ considered them against the surrounding medical record

and decided that they satisfied the supportability and consistency requirements under the new

regulations.  Because the evidence can reasonably support the ALJ's conclusion in these

respects, the Court will not substitute its judgment for that of the ALJ's.  *Richardson*, 402 U.S. at

401.  Accordingly, the ALJ's evaluation of the state agency psychological consultants' opinions

is supported by substantial evidence.

     Remand is not warranted on this issue.

     2.    <u>The ALJ Reasonably Discounted Plaintiff's Subjective Complaints</u>

     Plaintiff's second challenge is that the ALJ erred in her treatment of Plaintiff's testimony

regarding the severity of her symptoms.  Pl.'s Brief at 11-18 (Dkt. 14).  According to Plaintiff's

written statements, she is unable to work due to psychological symptoms associated with PTSD

and major depression:

> My PTSD and major anxiety impacted my ability to work after I retired from
> the Coast Guard.  Before I always had my close team and when I transited to a
> Veterans job I loved, I wasn't able to be around some people, make
> presentations, or just talk to people.  I lost friends too because of this.  I get
> terrible panic attacks and prefer to be isolated.  I could not work after the guy
> threw a screwdriver at me downtown.
>
>           . . . .
>
> I have severe depression and anxiety, PTSD.  Sometimes it's impossible for me
> to concentrate in person or on the phone with others.  Some things I cannot do
> like respond to a supervisor or boss when I'm having a panic attack.  I tried to
> work after my Coast Guard job and I had to resign or lose my job to workman's
> comp attorney.  Most people do not understand people with PTSD or depression
> and anxiety and they expect you to work obviously, and I cannot when I'm
> anxious.  I even tried to volunteer to help out temporarily at horse ranch and I
> had to stop because I could not deal with boarders and owner.

AR 265, 301.  Plaintiff reports that, due to these conditions, she has difficulty hearing,

remembering, completing tasks, concentrating, understanding, following instructions, and getting

along with others.  AR 270, 306 ("When I am anxious, which is all the time around others, my

**MEMORANDUM DECISION AND ORDER - 17**

chest feels heavy, heart races, and my memory is shot.  I feel terrible but this just makes things worse.").  Plaintiff substantially testified to these same issues at the hearing.  AR 58-68.  She also testified that she has limited motion (side-to-side) and some pain in her neck, as well as ankle pain, contributing to related physical restrictions.  AR 57.

### a.      The Standard for Evaluating Subjective Complaints

As the trier-of-fact, the ALJ is in the best position to make credibility determinations, and for this reason, her determinations are entitled to great weight.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  An ALJ is not "required to believe every allegation of disabling pain" or other nonexertional impairment.  *Fair*, 885 F.2d at 603.  However, if an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if such objective medical evidence exists, and the ALJ has not determined that the claimant is malingering, the ALJ must provide clear and convincing reasons before rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Id*.

The ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) the claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) the claimant's daily activities, the claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.

**MEMORANDUM DECISION AND ORDER - 18**

*Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 16-3p, available at 2017 WL 518034 (October 25, 2017). In short, it is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Generalized findings will not satisfy this standard. The reasons an ALJ provides for rejecting a claimant's symptom testimony "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell*, 947 F.2d at 345-46). This requires that the ALJ "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. at 493 (quoting *Reddick*, 157 F.3d at 722); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (in other words, "the 'clear and convincing' standard requires an ALJ to show [her] work").

On appeal, the district court's role is to review, not redo, this work. So long as there is substantial evidence for the ALJ's decision – even if there is another interpretation of the evidence – courts will not engage in second-guessing. *Thomas*, 278 F.3d at 959. When the ALJ's rationale for rejecting a claimant's testimony is "clear enough that it has the power to convince," the Court must affirm whether the Court is personally persuaded by the analysis or not. *Smartt*, 53 F.4th at 499.

        *b.*    *The ALJ's Evaluation of Plaintiff's Subjective Complaints*

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms alleged, but that her statements concerning the intensity, persistence, and limiting

**MEMORANDUM DECISION AND ORDER - 19**

effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 33-36. The ALJ's justification in this regard amounts to clear and convincing reasons for questioning Plaintiff's symptom testimony.

Beginning with Plaintiff's physical conditions, the ALJ acknowledged Plaintiff's history of cervical fusion, and the medical evidence's confirmation of "multilevel degenerative changes." AR 33. The ALJ repeated this analysis regarding Plaintiff's right distal tibial pilon fracture and degenerative changes in her right ankle. *Id*. at AR 33-34. Though acknowledging these conditions as representing severe medically determinable impairments (AR 28-30), the ALJ discounted Plaintiff's statements about their limiting effects. AR 57-58. The ALJ reasoned that, on examination, Plaintiff's physical findings "are fairly normal," with full range of motion, full strength, intact sensation, and balanced gait. AR 33-34 (citing AR 367, 507, 534, 1078, 1703). These are satisfactory reasons for discrediting Plaintiff's testimony regarding more severe limitations. *See also infra* (discussing Plaintiff's daily activities vis à vis Plaintiff's claimed physical limitations). Nevertheless, the ALJ credited the existence of these conditions and their impact upon Plaintiff's ability to work by limiting her RFC to "medium" work. AR 34.

Plaintiff responds that the ALJ "failed to identify Plaintiff's testimony that was not found credible and link that testimony to particular parts of the record that supported the non-credibility determination." Pl.'s Brief at 13 (Dkt. 14). This argument expects more than what is actually required from an ALJ when scrutinizing a claimant's subjective complaints. There is no requirement that an ALJ refute each and every allegation a claimant makes in regard to her alleged impairments. Rather, an ALJ is only "required to make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas*, 278 F.3d at 958). Plaintiff's testimony may add color and context to the alleged extent of her limitations, but

**MEMORANDUM DECISION AND ORDER - 20**

it does not fundamentally change how the ALJ rejected any notion that these physical conditions preclude work. The ALJ's findings in this respect are sufficiently specific to permit the Court to conclude that she did not arbitrarily discredit Plaintiff's testimony.

Turning to Plaintiff's "more significant limitations associated with [Plaintiff's] mental health impairments," the ALJ similarly considered Plaintiff's medical history and corresponding testimony, eventually concluding that Plaintiff is not as limited as she insists. AR 34-36. The ALJ's justification in this regard amounts to clear and convincing reasons for rejecting Plaintiff's symptom testimony.

First, the ALJ found that Plaintiff's claims exceed the support in the medical record. AR 34. Specifically, whereas Plaintiff contends that her mental impairments are altogether debilitating, the ALJ noted how the medical evidence shows – even without medication – that Plaintiff has been able to maintain a stable mood and decreased symptoms with counseling, walking, and minimal horse work. *Id.* (citing AR 979, 1011-55, 1797, 1800, 1820). The ALJ also observed that Plaintiff's mental status examinations were intact, with Plaintiff presenting as pleasant, cooperative, and with relatively euthymic mood. AR 31, 34 (citing AR 412, 418, 533, 593, 1024, 1034, 1797, 1800, 1248-49, 1631). As the treatment and examination evidence thus reasonably conflicted with the extent of Plaintiff's alleged mental health symptoms, such evidence was appropriately considered in assessing Plaintiff's subjective testimony. *See Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis.").

**MEMORANDUM DECISION AND ORDER - 21**

Second, the ALJ concluded that Plaintiff's daily activities suggest that her mental health symptoms are not disabling. AR 34-35. This included interacting with family members, managing her own personal care needs, some shopping, preparing meals, doing laundry, cleaning the kitchen, driving, babysitting her grandchildren on occasion, providing care for horses, and recreational horse riding. AR 31-32, 33-34 (citing AR 265-72, 301-08, 412, 1797). In this way, the ALJ found that certain activities demonstrate Plaintiff's abilities in several particular areas of mental functioning that, although limited, signaled an ability to work, albeit with the limitations accounted for in Plaintiff's RFC. *See Smartt*, 53 F.4th at 499 (a claimant's "daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'") (quoting *Molina*, 674 F.3d at 1113).

Finally, the ALJ found that Plaintiff had some mild to moderate difficulties in mental functioning, owing to her mental disorders. AR 31-32. The ALJ thus assessed several mental limitations in Plaintiff's RFC, such as having "occasional interactions with coworkers," "no interaction with the public," and "limited to occasional changes in a routine work setting." AR 32. Plaintiff did not identify any evidence in the record showing that these limitations are insufficient to accommodate her mental health conditions and symptoms.

Together, these reasons amount to clear and convincing explanations as to why the ALJ found Plaintiff's testimony not entirely credible. Crucially, the Court's role is not to decide whether Plaintiff is disabled under the applicable statutes and regulations, or even whether she suffers from chronic, disabling limitations. In assessing Plaintiff's credibility, the ALJ was not focused on whether Plaintiff had pain or limiting mental disorders, but on whether these impairments prevent her from engaging in any full-time work. It is the reasonableness of *these* findings that the Court must review on appeal.

**MEMORANDUM DECISION AND ORDER - 22**

On those points, Plaintiff identifies conflicting evidence in support of her position. Even though this conflicting evidence may not have been given the weight that Plaintiff would have preferred, the ALJ's decision to question her subjective symptom allegations contains clear and convincing reasons for doing so. The Court uses – as it must – that standard. Accordingly, the ALJ will not be second-guessed given the justifications provided. *Batson*, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.").

Remand is not warranted on this issue.

3.    The ALJ Properly Considered the Statements from Plaintiff's Spouse

Plaintiff's final challenge is that the ALJ improperly rejected the lay witness statements of her spouse without providing germane reasons for doing so. Pl.'s Brief at 18-20 (Dkt. 14). At the time Plaintiff filed her brief, the Ninth Circuit had not yet resolved whether older Ninth Circuit precedent requiring ALJs to provide germane reasons before rejecting lay statements continued to apply to claims brought under the new regulations. *Crummett v. King*, 2025 WL 470890, at *2 (9th Cir. 2025); *Stephens v. Kijakazi*, 2023 WL 6937296, at *2 (9th Cir. 2023); *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. 2022).

On March 7, 2025, the Ninth Circuit resolved this issue, holding that its "'germane reasons' precedent no longer applies to claims filed on or after March 27, 2017, and in considering such claims, ALJs need not explain their reasons for discounting evidence from nonmedical sources, such as the claimant's friends and family." *Hudnall v. Dudek*, 2025 WL 729701, at *3 (9th Cir. 2025). *Hudnall* forecloses Plaintiff's challenge to the ALJ's treatment of her spouse's statements.

## IV.  <u>ORDER</u>

Based on the foregoing, Plaintiff's "Complaint for Review of Social Security" (Dkt. 1) is

DENIED, and the decision of the Commissioner is AFFIRMED.



DATED:  March 30, 2025

_____
Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 24**